IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Marriage of: | ) | No. 34064-3-III |
| | ) | |
| ELLEN DONEEN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | PUBLISHED OPINION |
| | ) | |
| JAMES DONEEN, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, A.C.J. — Ellen Doneen appeals the trial court's property distribution in the dissolution of her 45-year marriage to James Doneen. She primarily argues the trial court erred as a matter of law when it failed to distribute all property, regardless of its character, roughly equally. We take this opportunity to clarify the law: In reaching a just and equitable distribution of property under RCW 26.09.080, trial courts must consider multiple factors, including four statutory factors. Although the duration of the marriage or domestic partnership is one statutory factor, this factor may not be considered so heavily so as to exclude the other statutory factors. Because the trial court

properly considered multiple factors, including the four statutory factors, we affirm the trial court's distribution of the parties' property.

## FACTS

James and Ellen Doneen married in July 1969. Around this time, the couple moved into a farmhouse in Whitman County that James's grandparents had homesteaded in the 1800s. James eventually inherited the house and land from his father, mother, and aunt. He inherited the property free and clear, and the couple never paid rent or a mortgage. Over the years, the couple completed various remodeling and maintenance projects on the home.

James worked as a farm hand and Ellen worked at J.C. Penney's. They each made roughly $20,000 per year, and their combined annual income was typically between $40,000 and $44,000. They lived paycheck to paycheck and did not have extra money to save or invest. They had no debts. James later inherited several hundred thousand dollars in investment accounts from his parents and his aunt.

In April 2014, Ellen petitioned to dissolve the marriage. The two separated in September 2014 after 45 years of marriage.

At the time they separated, they were both 72 years old. Ellen's monthly income was roughly $1,100 per month, which was from social security and a J.C. Penney's

pension. James's income was roughly $1,900, which was from social security and payments from a federal crop reclamation project.

Ellen's health was good, except for high blood pressure and blood clots in her leg, which prevented her from working. James was in remission from cancer and had suffered three heart attacks, but believed he was able to work.

At trial, a primary issue was how to characterize the various property, including the investment accounts and the real property. James testified the farm had been in his family for 150 years. He testified that when he died he wanted to leave the farm and land to his grandsons, who wanted to become farmers.

Ellen called the chief appraiser for Whitman County to opine on the land's value. The appraiser testified the land was worth between $2,000 and $3,000 per acre.

In closing, Ellen argued that under *In re Marriage of Rockwell*, 141 Wn. App. 235, 170 P.3d 572 (2007), the trial court was required to place the parties in roughly equal financial positions for the rest of their lives, regardless of the character of the property. James asked the court to distribute nearly all of the community assets to Ellen and, if necessary, also award her a portion of his separate property. After both parties' closing arguments, the trial court took the matter under advisement and stated it would issue a letter opinion.

3

In its letter opinion, the trial court found that most of the investment accounts as well as all of the real property—which included the land, the house, and the shop—were James's separate property because he had inherited them from his family. The court found the real property was worth $600,000 and the investment accounts were collectively worth $425,978, for a total of $1,025,978. Of James's separate property, the court awarded James $800,978 and Ellen $225,000.

The trial court found the community marital property was worth $151,143.00. Of the community property, the court awarded Ellen $106,532.50 and James $44,610.50. Taking the separate and community property together, the court awarded James a grand total of $845,588.50 and Ellen a grand total of $331,532.50.

The trial court asked the parties to prepare the findings of fact and conclusions of law. The findings, conclusions, and the decree of dissolution were entered on June 2, 2015.

Several days later, James suffered a heart attack and died.

On June 11, Ellen moved for reconsideration. She again argued *Rockwell*, 141 Wn. App. 235 required the court to equalize the financial circumstances of the parties because they had a long-term marriage, regardless of the character of the property. She argued the court failed to do this, as it had awarded James substantially more property.

4

That same day, James's attorney also moved for reconsideration.[1] James's attorney argued the trial court should have awarded the tractor to James. He also argued the court mischaracterized the Mitsubishi Lancer, the Formula boat, and two U.S. Bank accounts as community property. He argued James had bought the car, bought the boat, and funded the U.S. Bank accounts with funds from one of his separate annuities, and therefore they should have been characterized as James's separate property. James's attorney attached a declaration in support of the motion for reconsideration, which James had signed a few days before he died.

Ellen later moved to strike James's motion for reconsideration. She argued James's attorney did not have authority to move for reconsideration after James's death, and the estate was not substituted as a party before the 10-day deadline for filing a motion for reconsideration had expired. Ellen moved to substitute the estate as a party under CR 25, acknowledging that she needed a party to oppose her motion for reconsideration. The personal representative of James's estate also moved to substitute himself as a party.

The court held a telephonic hearing to discuss the status of the case in light of James's death. The court stated it would like to achieve substantial justice and reach the merits of the parties' reconsideration motions. The court instructed James's attorney to

---

[1] There is no evidence James's attorney knew about James's death before he filed

file another motion for reconsideration after it substituted the estate as a party. The court

then entered an order substituting the personal representative of James's estate as a party.

Two months later, the court held a hearing on both parties' reconsideration

motions. At the beginning of the hearing, the trial court stated,

> Gentlemen,—each of you has on a motion for reconsideration. And
> as I've previously told you, I'm of a mind to consider both motions, and
> waive any requirement that they—should have been filed within a certain
> time, because of the extraordinary circumstances of the respondent's death.

Report of Proceedings at 318.

The court then heard Ellen's motion for reconsideration. Ellen asked the court to

explain why it distributed roughly 75 percent of the total property to James and 25 percent

to her. The court explained that the majority of the property was James's separate

property, and that it had relied on the presumption that courts award separate property to

its owner except when necessary to avoid a serious inequity to the other party. The court

also agreed that James should keep the real property so he could leave it to his side of the

family. The trial court further explained that it did not want to totally invade James's

separate property, but wanted to invade it enough to make the distribution slightly more

equitable.

---

the motion for reconsideration.

6

The court then heard James's motion for reconsideration. The court agreed it mistakenly characterized the Mitsubishi Lancer and Formula boat as community property and stated it would recharacterize them as James's separate property.

The court entered new findings, conclusions, and a decree of dissolution in light of the parties' motions for reconsideration. The court made several changes to its previous property distribution. The court recharacterized the Formula boat and U.S. Bank accounts as James's separate property and awarded them to James's estate. The court also recharacterized the Mitsubishi Lancer as James's separate property, but nevertheless awarded it to Ellen. The court awarded the tractor to James's estate.

Following reconsideration, the court's final property distribution was as follows: the community marital property was worth $107,422. Of this sum, the court awarded Ellen $96,172 and James $11,250—roughly a 90 percent/10 percent split in favor of Ellen. James's separate property was worth $1,023,408. Of this sum, the court awarded Ellen $228,000 and James $795,408—roughly a 78 percent/22 percent split in favor of James.[2] The court found that Ellen had no separate real or personal property. In sum,

_____

[2] In its initial order, the court found the U.S. Bank accounts were worth $16,721 and the American Equity 489 account was worth $29,570. However, on reconsideration, the court did not make findings as to the value of any of these assets. The lack of values for these assets accounts for the difference in the overall property value between the initial orders and the orders on reconsideration.

7

taking the separate and community property together, the court awarded James a grand total of $806,658 and Ellen a grand total of $324,172—roughly a 71 percent/29 percent split in favor of James.

Ellen appeals.

## ANALYSIS

### A.   PROPERTY DISTRIBUTION

Ellen argues the trial court abused its discretion by erring as a matter of law when it distributed the assets unequally in favor of James. Relying on *Rockwell*, 141 Wn. App. 235, she contends the trial court was required to put her and James in roughly equal financial positions—regardless of the property's character—given the length of their marriage. Ellen does not challenge any of the trial court's characterizations of the property as separate or community.

RCW 26.09.080 requires a trial court dividing property in a dissolution proceeding to make a "just and equitable" distribution of property. This statute requires the trial court to consider multiple factors in reaching a "just and equitable" distribution. These factors include (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of the parties at the time of the property division. RCW 26.09.080.

8

All property, community and separate, is before the court for distribution. *In re Marriage of Larson*, 178 Wn. App. 133, 137, 313 P.3d 1228 (2013). Prior to 1985, Washington courts held that the trial court should award a spouse the separate property of the other spouse only in "exceptional circumstances." *E.g.*, *Merkel v. Merkel*, 39 Wn.2d 102, 115, 234 P.2d 857 (1951); 2 WASH. STATE BAR ASS'N, FAMILY LAW DESKBOOK, § 32.3(2) at 32-16 (2d. ed. 2000 & Supp. 2012). Our Supreme Court specifically discarded this rule in 1985, stating:

> This court will not single out a particular factor, such as the character of the property, and require as a matter of law that it be given greater weight than other relevant factors. The statute directs the trial court to weigh all of the factors, within the context of the particular circumstances of the parties, to come to a fair, just and equitable division of property. The character of the property is a relevant factor which must be considered, but it is not controlling.

*In re Marriage of Konzen*, 103 Wn.2d 470, 478, 693 P.2d 97 (1985).

The trial court has broad discretion to determine what is just and equitable based on the circumstances of each case. *Rockwell*, 141 Wn. App. at 242. Because the trial court is in the best position to determine what is fair, this court will reverse its decision only if there has been a manifest abuse of discretion. *Larson*, 178 Wn. App. at 138. This discretion applies to determinations regarding division of property. *In re Marriage of Wright*, 179 Wn. App. 257, 262, 319 P.3d 45 (2013).

9

Although the property division must be "just and equitable," it does not need to be equal. *Larson*, 178 Wn. App. at 138; *Rockwell*, 141 Wn. App. at 243. Nor does it need to be mathematically precise. *Larson*, 178 Wn. App. at 138. Rather, it simply needs to be fair, which the trial court attains by considering all circumstances of the marriage and by exercising its discretion—not by utilizing inflexible rules. *Id.*

In arguing that the trial court abused its discretion by distributing the assets unequally in favor of James, Ellen relies chiefly on the following quotation from *Rockwell*: "In a long term marriage of 25 years or more, the trial court's objective is to place the parties in roughly equal financial positions for the rest of their lives." *Rockwell*, 141 Wn. App. at 243.

At issue in *Rockwell* was the trial court's distribution of the wife's pension. *Rockwell*, 141 Wn. App. at 254. The trial court found that 92 percent of the pension was community property and 8 percent was the wife's separate property. *Id.* at 241. Of the community property portion of the pension, the trial court awarded 60 percent to the wife and 40 percent to the husband. *Id.* The trial court did this because the husband was younger, in good health, and employable at a substantial wage, whereas the wife was retired, older, and in poor health. *Id.* at 249, 254. The trial court awarded the wife her separate property portion of the pension. *Id.* at 241.

10

The husband appealed, and the *Rockwell* court affirmed the trial court's 60 percent/40 percent division of the community property. *Id.* at 249, 255. The court reasoned that trial courts have broad discretion in determining what will be a fair and equitable distribution. *Id.* at 255. The court further reasoned that "where one spouse is older, semiretired, and dealing with ill health, and the other spouse is employable, the court does not abuse its discretion in ordering an unequal division of community property." *Id.* at 249.

Ellen's reliance on *Rockwell* is misplaced. The *Rockwell* court affirmed the trial court; its holding was permissive in nature, not mandatory. *See also Sullivan v. Sullivan*, 52 Wash. 160, 162-64, 100 P. 321 (1909) (affirming trial court's award of $92,500 to wife and $129,000 to husband). *Rockwell* does not support Ellen's contention that trial courts are *required* to divide all the property equally in a long-term marriage and ignore the property's character.

In making this argument, Ellen focuses almost entirely on the third factor in RCW 26.09.080: the duration of the marriage. Her argument suggests that the trial court should have relied on this factor to the exclusion of the others. But the *Konzen* court explicitly rejected any approach that focused on one factor and excluded all others.

11

*Konzen*, 103 Wn.2d at 478. Ellen ignores that RCW 26.09.080 also directs trial courts to consider the nature and extent of the separate and community property.

Here, the trial court awarded Ellen $96,172 of the community property, which was about 90 percent. The trial court also gave her $228,000 of James's separate property— roughly 22 percent of it—explaining that it did not want to totally invade James's separate property, but wanted to invade it enough to make the distribution slightly more equitable.[3] In doing so, the trial court declined to utilize an inflexible rule, but rather properly considered all the circumstances of the marriage and exercised its discretion to attain a result in accordance with RCW 26.09.080.

We conclude the trial court did not abuse its discretion by distributing the property unequally in favor of James.

B.     POSTDECREE PROCEDURAL ISSUES

Ellen argues the trial court erred when it considered James's motion for reconsideration. She argues that James's attorney did not have authority to move for

---

[3] Ellen argues in her reply that the trial court erred in awarding the farmland to James because there was no evidence at trial "that there was a will or other future transfer of the Doneen land to [James's] grandchildren." Reply Br. of Appellant at 3. It is unclear how this is relevant. It is undisputed the land was James's separate property, and the trial court awarded it to James because it had been in his family for generations and he intended to leave it to his grandsons. This was within the court's discretion.

12

reconsideration after James's death, and that the estate was not substituted as a party before the 10-day deadline for filing a motion for reconsideration had expired. She asks this court to reverse the portions of the order on reconsideration that granted relief to James.

"If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties." CR 25(a)(1). All time limits applicable to substitution of parties are within the court's discretion under CR 25. *Barker v. Mora*, 52 Wn. App. 825, 831, 764 P.2d 1014 (1988).

Under CR 59(b), however, a party must move for reconsideration "not later than 10 days after the entry of the judgment, order, or other decision." The trial court "may not extend the time for taking any action under . . . [CR] 59(b)." CR 6(b). Consequently, trial courts have no discretionary authority to extend the time to file a motion for reconsideration under CR 59(b). *See Metz v. Sarandos*, 91 Wn. App. 357, 360, 957 P.2d 795 (1998) (trial court's enlargement of 10-day CR 59 deadline was reversible error).

Here, James's attorney filed the reconsideration motion within the 10-day limit. While James's death prior to the filing caused the filing to be without proper authority, this infirmity was removed once the estate was substituted and the estate ratified the motion.

13

No. 34064-3-III
*In re Marriage of Doneen*

Affirmed.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, J.

14