

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN RE THE MATTER OF THE MARRIAGE OF | ) ) ) | No. 35832-1-III |
| JOHN ARTHUR LODWIG, | ) ) | |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| and | ) ) | |
| MELANIE ISHA LODWIG, | ) ) | |
| Appellant. | ) | |

FEARING, J. — In this marital dissolution suit, Melanie Lodwig appeals the

division of property relating to a storage facility owned by her and John Lodwig, the

valuation of John's commercial construction business, and an award of maintenance.

Since Melanie fails to cite to the record to support some of her arguments and because the

trial court did not abuse its discretion, we affirm.

FACTS

Melanie Lodwig's statement of the case in her opening brief lacks any citation to the trial court record in violation of RAP 10.3(a)(5). Thus, we glean our facts from the citations to the record found in John Lodwig's brief.

John Lodwig and Melanie Lodwig, now Summers, wed on August 22, 2002. John and Melanie separated on July 19, 2016. At the time of the marital dissolution, Melanie was age 44 and John age 56. Melanie has three years of college education in biology and a certification in graphic design. During trial, Melanie described herself as "a 45-year-old entrepreneur, business owner, senior executive, educated, and intelligent woman, a devoted community member and mother." Clerk' Papers (CP) at 56. The marriage produced two children, ages 10 and 15 at the time of the dissolution.

This appeal in part concerns the marital community business of Baker Flats Recreational Self Storage, Inc. (Baker Flats), which operates a public storage facility. John and Melanie Lodwig constructed the storage buildings in 2006, four years after their marriage. Cinco Properties, LLC (Cinco Properties) owns the buildings and land on which the storage buildings sit. Melanie and John Lodwig equally owned Cinco Properties at the time of the marital dissolution.

John Lodwig founded a construction firm, Clearwater Custom Homes, Inc. (Clearwater), in 2001, one year before he and Melanie wed. Clearwater has no employees other than John. The construction company's only physical assets are a used

truck and hand tools. Clearwater sometimes struggled, but on occasion found success constructing commercial buildings for Washington Mutual, Sleep Country, and 7-11 and building school district facilities. Clearwater now only assumes small jobs for smaller profit, because John, at his age, can no longer work long hours.

Baker Flats and Clearwater served as the primary source of the couple's income during the marriage. Melanie Lodwig worked for Baker Flats and Clearwater during the early stages of the respective companies' development and minimally over the last few years of the marriage. Melanie performed marketing services for both Clearwater and Baker Flats, and she built the website for each company. Otherwise, Melanie performed the critical role of raising the children.

Throughout the marriage, Melanie Lodwig helped friends market businesses and designed logos for some of the businesses. The friends typically paid Melanie in trade. Melanie now plans to operate a float spa in Chelan, and she believes this venture will provide income of $10,000 per month. Her testimony did not clarify whether the $10,000 per month would be gross or net income. A float spa is similar to a tanning salon where one enters a "pod" and floats in high density salt water. The pod functions as a sensory deprivation tank that serves to reduce stress.

PROCEDURE

John Lodwig filed for marriage dissolution on July 19, 2016, and the court conducted a dissolution trial on May 12, 2017. In anticipation of trial, the parties hired

certified public accountant Rick Linder, who valued the construction company,

Clearwater Custom Homes, to be between $94,000 and $127,000. John Lodwig valued

the business in his trial brief at $50,000. During trial testimony, he declared that, if

someone paid him between $50,000 and $100,000, he would sell the company. Melanie

did not testify as to her opinion of Clearwater's value at trial. In her trial brief, Melanie

wrote that Clearwater "carries an intrinsic value of approximately $130,000." CP at 6.

John Lodwig testified at trial that Baker Flats generates income now and also

functions as a retirement fund. Both John and Melanie testified that each intended to rely

on Baker Flats and Cinco Properties for income in the future. When asked about

retaining ownership of the Baker Flats and Cinco Properties entities, John responded:

> I think it's imperative to keep Baker/Cinco for the well-being of the kids and the well-being of Melanie and the well-being of myself.
> There's a—there's a house of cards with all three businesses where in the past one business could shore up another one. If Clearwater got, you know, short on money and it needed money for temporary, I could have the ability to shift it over. If Clearwater was strong and those companies—I could shift it back that way. Clearwater supported, 100 percent supported, Baker Flats for many, many years. Otherwise, Baker Flats wouldn't be there. So Baker Flats had acquired enough money and Cinco had acquired enough money to where that need wouldn't have been there.
> But right now if you look at the global picture Clearwater is, you know, in trouble. So I would stress that . . . until the kids are grown . . . if we maintain that ownership it would be best. It would be best in the interest of both of us.
> But at 62 years old I would be able to sell it and probably stretch whatever comes out of it to my end zone or end game provided that the economy was good and it didn't tank.

Report of Proceedings (RP) at 48-49.

The trial court valued the combined worth of Baker Flats and Cinco Properties at $1,850,000. The court awarded fifty percent ownership of the two corporations to each spouse. The trial court valued the Clearwater business at $77,000 and awarded John Lodwig one hundred percent ownership of the construction firm. The trial court awarded Melanie Lodwig the parties' family home, a $136,000 equalization payment, and $48,000 in spousal maintenance to be paid for two years at $2,000 per month. This final division granted Melanie $744,595 and John $743,024 in assets.

The marriage dissolution court also ordered:

> Both parties shall take all necessary actions to implement the terms of the Final Divorce Order. In the event that either party fails to perform said acts, the other party may seek enforcement through the Court. The party seeking enforcement through the Court shall be awarded all legal fees and costs associated with bringing the action for enforcement[.]
> John Lodwig shall pay Melanie Lodwig $136,000 by June 30, 2017[.]
> John Lodwig will run Baker Flats' day to day operations. Melanie Lodwig shall have access to monthly profit and loss statements and access to all bank statements for Baker Flats and Cinco Properties. John Lodwig shall notify Melanie Lodwig of any single purchase or other expenditure that is greater than $3,000 per transaction.
> The monthly net income of Baker Flats shall be distributed 40% to Melanie Lodwig, 40% to John Lodwig and 20% to the Cinco reserve account. When the Cinco reserve account reaches a $35,000 balance, the Baker Flats monthly net income shall be distributed equally between Melanie Lodwig and John Lodwig. In the event that the reserve account balance is reduced to below $35,000 the net income of Baker Flats shall be distributed 40% to Melanie Lodwig, 40% to John Lodwig and 20% to the Cinco reserve account until the balance again reaches $35,000.

RP at 39-40.

5

After the dissolution court issued its ruling, Melanie Lodwig filed a motion to reconsider seeking "a court order to properly value and allocate the asset and liability division ordered by Judge Small at trial . . . , as well as to seek and receive a just award of spousal maintenance." CP at 46. As part of the motion, Melanie claimed that the parties stipulated to a value of Clearwater at $127,000. The trial court denied the motion. In its denial, the trial court wrote:

> *No Evidence of a Stipulation as to Value of Clearwater*
>
> The court could not find any written stipulation that the parties had agreed to a value for Clearwater Construction. Indeed, Petitioner's Trial Brief lists the value at $50,000.
> The court does recall the parties stipulated to the admissibility of one expert's opinion of the value. There was no stipulation as to the value of that asset. Had there been the court would reconsider its decision on this issue.
> Instead, the court considered all the evidence offered by both parties and found the value was not $50,000 as argued by Petitioner and not $127,000 as argued by Respondent. The court found the value to be $77,000.
>
> . . . .
>
> *Maintenance*
>
> Maintenance payments began early on in this dissolution. Respondent was advised to find employment early on in this dissolution. As respondent stated in her recent declaration:
> "I am a 45-year-old entrepreneur, business owner, senior executive officer, educated and intelligent woman—I have been in and part of the construction and real estate industry my entire life."
> Two *additional* years of maintenance, considering the economic circumstances of the parties, their ages, education and experience, and the

duration of the marriage is what the court determined to be reasonable. The
court still does.

CP at 78-79.

## LAW AND ANALYSIS

Melanie Lodwig appeals the trial court's division of property. Pursuant to this

assignment of error, she also challenges the trial court's valuation of John's construction

business. Finally, Melanie appeals the amount of her maintenance award.

### Valuation of Clearwater Custom Homes

Melanie Lodwig challenges the trial court's valuation of the parties' commercial

construction business on two grounds: (1) the parties filed by exhibit an agreed value

significantly higher than that adjudged by the court, and (2) the court arrived at a

valuation unsupported by any admissible evidence. Melanie fails to cite to any portion of

the record to support her claim that the parties stipulated to the value. RAP 10.3(a)(6)

requires an appellant to cite to the relevant portions of the record in the argument section

of her brief. A party must cite to the record for the testimony about which she assigns

error. *Glazer v. Adams*, 64 Wn.2d 144, 149, 391 P.2d 195 (1964). Therefore, we decline

review of this first argument.

John Lodwig argues that the trial court's valuation of the construction business lay

within the values presented at trial, such that substantial evidence supported the

judgment. We agree.

Property valuation is a factual determination that must be supported by substantial evidence in the record. *In re Marriage of Sedlock*, 69 Wn. App. 484, 492, 849 P.2d 1243 (1993). An owner may testify to the value of his or her property, and the trial court determines the weight given to the testimony. *Worthington v. Worthington*, 73 Wn.2d 759, 763, 440 P.2d 478 (1968). When the trial court's valuation lies between the highest value given by one witness and the lowest value rendered by another witness, substantial evidence supports the findings. *In re Marriage of Soriano*, 31 Wn. App. 432, 435, 643 P.2d 450 (1982). Said another way, when parties offer conflicting evidence on the value of the property, the trial court may adopt the value asserted by either party or any value in between. When the trial court has weighed the evidence, this court will not substitute its own judgment for that of the trial court or weigh the evidence or credibility of witnesses. *In re Marriage of Rich*, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996).

A jointly hired evaluator estimated Clearwater Custom Homes to be between $94,000 and $127,000, while John valued the business somewhere between $50,000 and $100,000. Although Melanie did not offer her opinion as to the company's value at trial, she presented an approximate figure of $130,000 in her trial brief. The dissolution court valued the business at $77,000. Because the trial court's valuation of Clearwater at $77,000 fell within the range of credible evidence, we affirm the trial court's valuation.

Division of Property

Next Melanie Lodwig assigns error to the trial court's dividing of the corporation Baker Flats into equal shares. In a dissolution action, the trial court must make a "just and equitable" distribution of the parties' marital property. *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002). The trial court's distribution of property in a dissolution action is guided by RCW 26.09.080. These factors include (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of the property is to become effective. RCW 26.09.080. Other relevant factors include "the health and ages of the parties, their prospects for future earnings, their education and employment histories, their necessities and financial abilities, their foreseeable future acquisitions and obligations, and whether ownership of the property is attributable to the inheritance or efforts of one or both spouses." *In re Marriage of Gillespie*, 89 Wn. App. 390, 399, 948 P.2d 1338 (1997). In weighing these factors, a dissolution court has broad discretion in distributing marital property and liabilities, and its decision will be reversed only if there is abuse of discretion. *In re Marriage of Kraft*, 119 Wn.2d 438, 450, 832 P.2d 871 (1992). Nonetheless, the trial court is not required to divide community property equally. *In re Marriage of Rockwell*, 141 Wn. App. 235, 243, 170 P.3d 572 (2007).

The spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court. *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). The Supreme Court wrote in *Marriage of Landry*:

> Trial court decisions in a dissolution action will seldom be changed upon appeal. Such decisions are difficult at best. Appellate courts should not encourage appeals by tinkering with them. The emotional and financial interests affected by such decisions are best served by finality.

*In re Marriage of Landry*, 103 Wn.2d at 809.

Melanie Lodwig contends that the trial court erred by not awarding all of the ownership interest in Baker Flats to one party and presumably awarding the other party an equalization payment. She argues that the trial court erroneously forced the parties to become tenants in common. Conversely, John argues that: (1) Melanie raised her tenancy in common argument for the first time on appeal, and (2) the dissolution court did not create a tenancy in common since a corporation owns the real estate. We agree with John's first contention and do not reach the second argument.

We find nowhere in Melanie's trial brief, trial testimony, or motion seeking reconsideration a request that the court award 100 percent ownership of Baker Flats to one party in order to avoid a tenancy in common. Appellate courts will generally not entertain issues raised for the first time on appeal. RAP 2.5(a). The trial court deserves the opportunity to review an argument before this court entertains the contention.

10

Maintenance

Finally, Melanie Lodwig challenges the dissolution court's maintenance award. She contends the court failed to consider each parties' ability to pay and each parties' need for support and thus granted an unfair small amount. We disagree.

Melanie Lodwig contends that the maintenance award affords her insufficient time and resources to become self-sufficient following the termination of a seventeen-year marriage. Melanie cites to an article published in the Washington State Bar News written by Judge Robert Winsor who purportedly created three categories of marriage: (1) a short-term marriage, lasting five years or less, (2) a long-term marriage lasting 25 years or more, and (3) an intermediate term of all marriages in between. Melanie states, without citation to authority, that, in long-term marriages, the trial court's objective is to place the parties in roughly equal financial positions for the rest of their lives. Melanie declares that her marriage to John was 17 years, even though the trial court concluded the marriage lasted less than 14 years. She further argues, without citation to authority, the absence of a material difference between a marriage of 17 years and a marriage of 25 years. Melanie concludes that, without additional findings of fact, the arbitrariness of the dissolution court's maintenance decision is manifest.

We review the dissolution court's award of spousal maintenance for abuse of discretion. *In re Marriage of Zahm*, 138 Wn.2d 213, 226-27, 978 P.2d 498 (1999). This court finds an abuse of discretion only if the trial court bases its award or denial of

11

maintenance on untenable grounds or for untenable reasons. *In re Marriage of Wright*, 78 Wn. App. 230, 237-38, 896 P.2d 735 (1995). The overriding concern is the economic position in which a dissolution decree leaves the parties. *In re Marriage of Washburn*, 101 Wn.2d 168, 181, 677 P.2d 152 (1984).

RCW 26.09.090 outlines the factors the court should consider in determining maintenance. This nonexclusive list of factors includes:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage or domestic partnership;
> (d) The duration of the marriage or domestic partnership;
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

RCW 26.09.090(1)(a)-(f).

Melanie may premise her appeal of the maintenance award on language from *In re Marriage of Rockwell*, 141 Wn. App. 235 (2007). The *Rockwell* court stated that, in long-term marriages of over twenty-five years "the trial court's objective is to place the parties in roughly equal financial positions for the rest of their lives." *In re Marriage of*

12

*Rockwell*, 141 Wn. App. at 243. Melanie's apparent reliance on *Rockwell* is flawed. This court considered and rejected an argument similar to Melanie's contention in a recent case. In *In re Marriage of Doneen*, 197 Wn. App. 941, 391 P.3d 594 (2017), *review denied*, 188 Wn.2d 1018, 396 P.3d 337 (2018), the wife appealed the trial court's property division that left her with less than fifty percent of the community assets. She argued that, under *Rockwell*, the court was required to equalize the financial circumstances of the parties because of their forty-five-year marriage. This court rejected the argument and discerned *Rockwell*'s language as "permissive in nature, not mandatory." *In re Marriage of Doneen*, 197 Wn. App. at 950. This court noted that the trial court properly considered all of the circumstances of the marriage while exercising its discretion to attain a result in accordance with RCW 26.09.090.

While this court agrees with the analysis in *Doneen*, we also deem Melanie Lodwig's argument misplaced. Melanie and John's marriage cannot be coined as "long-term" under *Rockwell* because the marriage did not last twenty-five years. Second, Melanie apparently relies on *Rockwell* in arguing that the trial court's maintenance award was manifestly unreasonable. Yet, the *Rockwell* court did not analyze a challenge to a maintenance award, rather the court discussed the duration of the parties' marriage when it was confronted with a challenge to the unequal distribution of community property.

After finding that Melanie Lodwig has need and John has the ability to pay, the trial court ordered John to pay $2,000 per month starting on June 10, 2017 and ending on

May 31, 2019. Sufficient evidence supports the trial court's award. The court considered Melanie's declaration wherein she states, "I am a 45-year-old entrepreneur, business owner, senior executive, educated, and intelligent woman." CP at 56, 79. Melanie also testified regarding her float spa business, for which she already has a business plan. She averred that the business will produce $10,000 per month. Melanie convinced the court "that her business plan was well thought out and would probably result in her owning a business well suited to the Chelan/Manson area and the well-to-do tourists and part-time residents." CP at 78-79. The dissolution court further concluded that, by providing Melanie with income from Baker Flats and maintenance for two years and awarding her the family home, Melanie could thrive.

Attorney Fees

John Lodwig requests an award of reasonable attorney fees and costs on appeal under RCW 26.09.140 and RAP 18.9. Under RCW 26.09.140, the court may award one divorcing spouse attorney fees based on the respective financial resources of the party. Since John has sufficient resources, we decline his request under the statute.

An award of fees is proper when a party files a frivolous appeal. RAP 18.9(a). John argues that Melanie's appeal is frivolous because her brief (1) lacks citation to the record, (2) contains material misrepresentations, and (3) presents no facts or arguments that could create a debatable issue. An appeal is frivolous when it presents no debatable issues and is so devoid of merit that there is not a reasonable possibility of reversal.

No. 35832-1-III
*In re Marriage of Lodwig*

*Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980). While Melanie's brief lacks citation to the record as required by RAP 10.3, we do not find all of her arguments frivolous.

In a response brief footnote, John Lodwig accurately informs this court that Melanie's entire statement of the case lacks citation to the appellate record in violation of RAP 10.3(a)(5). The remedy provided by RAP 10.7 is to return the brief for corrections or to impose other sanctions. We impose sanctions of $150 against Melanie Lodwig and direct that she pay these sanctions to Chelan-Douglas County Volunteer Attorney Services. Melanie shall provide this court a receipt for the payment within thirty days.

CONCLUSION

We affirm all rulings of the dissolution court.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____          _____
Siddoway, J.                                            Pennell, A.C.J.

15