IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Marriage of<br>JUDITH ADAMS OAKES,<br><br>                    Respondent,<br><br>     and<br><br>THOMAS L. OAKES,<br><br>                    Appellant. | No. 83990-0-I<br><br><br><br>UNPUBLISHED OPINION |

BOWMAN, J. — Judith and Thomas (Tom) Oakes divorced in 2022 after 30 years of marriage. Tom[1] appeals, arguing the trial court abused its discretion by awarding Judith spousal maintenance for 10 years. He argues that the trial court erred by not considering the statutory factors under RCW 26.09.090, awarding maintenance when Judith had no financial need, believing it must "equalize" the parties' incomes, and failing to provide a sufficient basis for the award duration. Tom also claims that the court's order unfairly prevents him from seeking to modify the maintenance award after his retirement. We affirm.

FACTS

Judith and Tom married in April 1991 and raised three children. During the first 10 to 12 years of the marriage, Judith worked full-time as a pharmaceutical representative to support the family "exclusively" while Tom went

---

[1] To avoid confusion, we call the parties by their first names. We mean no disrespect.

to college and tried different careers. In the late 1990s, Tom founded American Northwest Advisory Services LLC and American Northwest Retirement Plan Services LLC (collectively American Northwest) and worked as a financial advisor. As American Northwest slowly became more profitable, Tom paid a larger share of the family's expenses. During the last decade, American Northwest prospered, and the business now grosses over $1 million annually.

In July 2020, the parties separated and Judith petitioned for dissolution. They were both in their early 60s. At trial in February 2022, the parties mostly agreed on how to value and divide their assets. But they disagreed on the value of American Northwest and the duration of spousal maintenance for Judith. After trial, the court divided the community assets equally, awarding each party $4,414,450. Tom received American Northwest, which the court valued at $3,000,000, an investment account valued at $1,353,358, and several other smaller cash and investment accounts. Judith received the family home, valued at $1,240,137, and several larger retirement, investment, and cash accounts.

As to spousal maintenance, Tom proposed an award to Judith that equalized the parties' income for 2 years, at which time Tom said he may choose to retire. After that, Tom suggested the court "award him a 70 percent split of the income," which he considered "fair in order to give him an incentive to continue working." Judith proposed a plan to equalize income for 10 years.

On April 4, 2022, the court issued the final divorce order and "Findings and Conclusions about a Marriage," adopting Judith's proposal. It set Tom's income from American Northwest at $716,067 per year and Judith's income at

$200,000.  Based on those yearly incomes, the court ordered $14,461 monthly maintenance to Judith for 10 years.[2]  It explained that the maintenance plan "is contingent upon Mr. Oakes's salary staying the same, and none of the possibilities described herein may be interpreted to preclude modification."

The parties each moved to clarify the court's order.  On May 4, 2022, the court granted the motions to clarify in part and changed its order to read:

> "Spousal support after Mr. Oakes turns 65 years old is contingent upon Mr. Oakes's salary staying at the set amount of $716,067; and none of the possibilities described herein may be interpreted to preclude modification.  Nothing in these orders constitutes a self-executing or automatic condition to modify or terminate spousal support.  The parties must pursue modification per applicable court rules and law."

Tom appeals.[3]

## ANALYSIS

Maintenance Award

Tom argues that the trial court erred by granting spousal maintenance for a 10-year term.  We disagree.

A trial court has considerable discretion over the amount and duration of a maintenance award.  In re Marriage of Luckey, 73 Wn. App. 201, 209, 868 P.2d 189 (1994).  The court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons.  In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

---

[2] Accounting for taxes, a maintenance payment of $14,461 leaves each party with $319,430 in annual net income.

[3] Judith cross appealed, designating the same orders as Tom.  Judith later moved to voluntarily dismiss her appeal.  A commissioner of our court granted the motion.

In determining whether the trial court abused its discretion in awarding maintenance, we review the court's findings of fact for substantial supporting evidence and for legal error. In re Marriage of Stern, 68 Wn. App. 922, 926, 929, 846 P.2d 1387 (1993). Substantial evidence is a quantum of evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise. In re Marriage of Vander Veen, 62 Wn. App. 861, 865, 815 P.2d 843 (1991). We review the record in a light most favorable to the prevailing party—here, Judith. In re Marriage of Gillespie, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997). Unchallenged findings of fact are verities on appeal. Muridan v. Redl, 3 Wn. App. 2d 44, 57, 413 P.3d 1072 (2018).

Tom argues that the trial court abused its discretion by (1) not considering the statutory factors under RCW 26.09.090, (2) awarding maintenance when Judith had no financial need, (3) believing it must "equalize" the parties' incomes, and (4) failing to provide a sufficient basis for the award duration. We address each of his arguments in turn.

(1)  Consideration of Statutory Factors

In awarding spousal maintenance, the trial court must consider the following nonexclusive statutory factors:

> (a)  The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently . . . ;
> (b)  The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c)  The standard of living established during the marriage . . . ;

> (d)  The duration of the marriage . . . ;
> (e)  The age, physical and emotional condition, and financial obligations of the spouse . . . seeking maintenance; and
> (f)  The ability of the spouse . . . from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse . . . seeking maintenance.

RCW 26.09.090(1).

The trial court abuses its discretion when it fails to fairly consider these statutory factors.  In re Marriage of Mathews, 70 Wn. App. 116, 123, 853 P.2d 462 (1993).  But "[n]othing in [the statute] requires the trial court to make specific factual findings on each of the factors listed in RCW 26.09.090(1)."  In re Marriage of Mansour, 126 Wn. App. 1, 16, 106 P.3d 768 (2004).  The only limitation on a maintenance award is that "the amount and duration, in light of all the relevant factors, be just."  In re Marriage of Spreen, 107 Wn. App. 341, 347-48, 28 P.3d 769 (2001) (citing In re Marriage of Washburn, 101 Wn.2d 168, 178, 677 P.2d 152 (1984)).

Tom argues that the trial court did not consider the statutory factors when awarding Judith spousal maintenance.  But the court's unchallenged findings show otherwise.  The trial court considered that Judith and Tom had a long-term, 30-year marriage and that they enjoyed a standard of living consistent with the marital community's substantial assets.  It found that both parties achieved advanced educations and successful careers.  During the marriage, Judith "stayed in a career that maximized financial stability for the family" rather than stay home with her children.  Judith supported Tom while he received his education and founded American Northwest.  And the court noted Judith "played an active role in [American Northwest]."  After American Northwest became

5

profitable, Tom agreed to pay all the family bills, which allowed Judith to use her income however she wanted. Finally, the court considered Judith's physical condition. It concluded Judith is in her mid-60s and suffers from a medical condition that makes it difficult for her to drive long distances, which her work often requires. Based on these factors, the court determined that "it is just and equitable to equalize the parties' incomes." This was not an abuse of discretion.

(2) Need for Maintenance

Tom argues that the trial court erred by awarding spousal maintenance without finding that Judith had a financial need. But "financial need is not a prerequisite to a maintenance award." In re Marriage of Wright, 179 Wn. App. 257, 269, 319 P.3d 45 (2013). And "maintenance is not just a means of providing bare necessities, but rather a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time." Washburn, 101 Wn.2d at 179. Here, the court determined that regardless of Judith's need, it was equitable to equalize the party's incomes as they transition into retirement. This was not error.

(3) Equalization of Incomes

Next, Tom argues that the trial court mistakenly believed that the law required the court to equalize the parties' incomes. But again, the record does not support Tom's contention.

In a long-term marriage of 25 years or more, the trial court's objective in distributing property and awarding maintenance is to place the parties in roughly equal financial positions for the rest of their lives. In re Marriage of Rockwell, 141

Wn. App. 235, 243, 170 P.3d 572 (2007). This objective is " 'permissive, not mandatory, in nature' " and does not require that the trial court equalize the parties' income. In re Marriage of Kaplan, 4 Wn. App. 2d 466, 475, 421 P.3d 1046 (2018) (quoting In re Marriage of Doneen, 197 Wn. App. 941, 950, 391 P.3d 594 (2017)).

The record shows that the court was aware it had the discretion to equalize the parties' incomes and chose to exercise that discretion. Both attorneys informed the trial court that it could, but need not, equalize the parties' incomes. During closing arguments, Judith's attorney argued that "the court is not required, there's not a mandate to the court to equalize the parties in a long-term marriage, but that is still the objective." And the court asked Tom's attorney:

> [D]o you think spousal support is required in this case?
> [TOM'S COUNSEL]:    No, not necessarily.
> THE COURT:    Okay.
> [TOM'S COUNSEL]:     I mean, if you do it — I think in a typical, most long-term marriages you equalize income going forward, but you don't have to do that.
> THE COURT: Okay.

In the end, the trial court determined, "Spousal support should be ordered because this is a long-term marriage, and it is just and equitable to equalize the parties' incomes." The decision reflects the parties nearing retirement age, their long-term marriage, Judith's contributions to the marital community, and the parties' disproportionate incomes after the marriage. Tom fails to show that the court mistakenly believed the law required it to equalize the parties' incomes.

(4)  Duration of Maintenance

Tom contends that "the court ordered [10] years of maintenance but provided no reason for the additional [8] years, which extend beyond Tom's intended retirement."  We disagree.

The court noted that Judith and Tom provided conflicting testimony of Tom's retirement plans.  Judith testified that Tom (then 63 years old) planned to work at American Northwest "into his 70s."  And Tom testified that he planned to retire at 65.  The court determined that while it "is hard to predict what will happen," Judith "presented the most reasonable (and fair) spousal support plan because either party can request a change based on income changes or hardship as set forth in statute."

Contrary to Tom's assertion, the court's 10-year maintenance award accounts for the possibility that Tom may work into his 70s, and if he does, it is equitable to equalize the parties' income for that time.

Modification of Maintenance

Finally, Tom argues the maintenance award is unfair because the court's order prevents him from moving to modify maintenance when he retires.  He contends that because the trial court anticipated he may soon retire, his decision to do so would not amount to a substantial change of circumstances.  Again, we disagree.

Under RCW 26.09.170(1)(b), the superior court may modify maintenance only when the moving party has shown a "substantial change of circumstances." A "substantial change of circumstances" is

> a substantial and material change in the condition and circumstances of the parties, occurring since the entry of the decree, relative to the factors of (1) the necessities of the divorced [spouse] . . . and (2) the practical and realistic ability of the ex-[spouse] to meet the obligations so imposed.

Lambert v. Lambert, 66 Wn.2d 503, 508, 403 P.2d 664 (1965). A substantial change of circumstances includes facts unknown to the trial court at the time of the decree or an unanticipated fact that arises after entry of the decree. In re Marriage of Tomsovic, 118 Wn. App. 96, 105, 74 P.3d 692 (2003).

In contemplating the duration of a maintenance award, the trial court acknowledged that Tom may soon retire:

> [The] evidence shows [Tom] has options for his career; for example, [Tom] might retire; continue running the family business; sell and/or consult for the family business; work for another firm within the financial services industry; or start a new business or career. It is hard to predict what will happen, and for how long, especially when factoring in the vagaries of stock market, real estate market, and personal health.

But the court could not determine which, if any, of the possibilities might occur. So, the court made its maintenance determination based on Tom's current financial ability. It ordered that Tom's obligation to pay maintenance "is contingent upon [his] salary staying the same, and none of the possibilities described herein may be interpreted to preclude modification." Nothing in the court's order forecloses Tom from seeking modification if or when he chooses to retire.

9

We affirm the final divorce order.

_____
Brennan, J

WE CONCUR:

_____
Díaz, J.

_____
Hazelrigg, ACJ