IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROY D. CHEESMAN, | No. 85475-5-I |
| Appellant, | DIVISION ONE |
| v. | |
| SOUND FORD, FRANK SCHMIDT, ADAM LARSON, FORD MOTOR COMPANY, JAMES FARLEY, JR., WILLIAM FORD, JR., | UNPUBLISHED OPINION |
| Respondent. | |

SMITH, C.J. — Roy Cheesman sued Ford Motor Company for product liability after the metal latch of his seat belt allegedly failed to retract fully and injured him when he entered his car. The trial court granted Ford's motion for summary judgment, dismissing the case with prejudice and concluding that Cheesman failed to meet his burden of proving that the seat belt was defective or that it caused him harm. Cheesman filed an untimely motion for reconsideration, which the trial court denied. On appeal, Cheesman contends that the trial court abused its discretion in denying his motion for reconsideration. Because the court did not err in denying the motion, we affirm.

FACTS

In July 2016, Roy Cheesman purchased a new 2016 Ford Fiesta from Sound Ford, a car dealership in Renton, Washington. Three years later, Cheesman's car was rear-ended by another vehicle while stopped at a red light.

The driver in the other vehicle fled the scene.  Cheesman, who had gotten out of his own car, hastily climbed back in to chase the other driver.  Eventually, the other driver stopped and the police responded to the accident.

Two days after the collision, Cheesman sought medical care.  He complained of a head injury, dizziness, and shoulder pain.  He attributed all pain to the collision, alleging aggravation of a preexisting shoulder injury.  He did not mention back pain or attribute any of his complaints to a defect in the seat belt.

Cheesman then initiated a slew of lawsuits against the driver that rear-ended him, the driver's insurer, and several of the insurer's employees.  At the conclusion of those lawsuits, he sued his own attorney for allegedly failing to obtain an appropriate settlement.

Over two years after the accident, and after all of his other lawsuits had settled, Cheesman alleged that he was injured by a defective driver's side seat belt during the accident.  He sought treatment from a chiropractor in April 2022.  During this April appointment, Cheesman informed the chiropractor that he thought his back pain was caused by a faulty seat belt when he jumped back into his car to chase the other driver.  This was the first time he ever attributed his injuries to the seat belt.

Two weeks later, Cheesman sued Ford Motor Company (Ford), two Ford executives, Sound Ford, and two Sound Ford employees.  Each claim centered on his theory that he injured his back when he re-entered his car to chase the other driver and the seat belt latch "stabbed" him in the back.  He also alleged a

2

breach of warranty.  The trial court dismissed Cheesman's claims against all parties except Ford.  The court similarly dismissed the warranty claim, noting that Cheesman did not present his vehicle for warranty repair during the warranty period.  Cheesman's product liability claim against Ford, asserting a defective seat belt, was the only remaining cause of action.  Ford then moved for summary judgment.

In April 2023, the trial court held a hearing on Ford's motion for summary judgment.  Ford argued that Cheesman provided no evidence that his seat belt was not reasonably safe or that it had caused him any harm.  Ford also noted that Cheesman admitted during his deposition that he "did not see really what injured [him] on [his] back."  Ford then provided evidence that the driver's side seat belt in Cheesman's car appeared to be functioning correctly.  Kenneth Cooper, a service technician, inspected the seat belt during discovery proceedings and determined that it retracted properly.  Jennifer Buckman, a Ford design analysis engineer, similarly determined that the seat belt was operating as designed.  Buckman also testified that Cheesman's proposed scenario, where the seat belt failed to retract and stood out from the seat, was impossible when a driver was exiting the vehicle.

In opposition to the motion for summary judgment, Cheesman submitted staged photos showing that the seat belt latch could be positioned to point outwards from the seat.[1]  He offered no evidence to counter Ford's statement

---

[1]  Cheesman acknowledged that he staged the photos to show the seat belt latch sticking out from the seat.

3

that it was impossible for the seat belt to remain in that position as the driver exited the vehicle. When asked directly by the court, Cheesman acknowledged that he had no medical evidence to support his claim and that no one had been able to tell him that his seat belt was malfunctioning.

The trial court granted Ford's motion for summary judgment, concluding that there was insufficient proof of an injury caused by the seat belt and insufficient proof that the seat belt was not reasonably safe.

Over two weeks later, Cheesman moved for reconsideration, arguing that the court erred in concluding that there were no genuine issues of material fact. The court denied Cheesman's motion. The court also awarded Ford its attorney fees and costs as the prevailing party.

Cheesman appeals.

ANALYSIS

Motion for Reconsideration

Cheesman argues that the court abused its discretion in denying his motion for reconsideration. Because the motion was untimely, we disagree.

We review a court's denial of a motion for reconsideration for abuse of discretion. River House Dev., Inc. v. Integrus Architecture, PS, 167 Wn. App. 221, 231, 272 P.2d 289 (2012). A court abuses its discretion if its decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." River House, 167 Wn. App. 221 at 231.

4

Under CR 59, a party must move for reconsideration "not later than 10 days" after the entry of an order. CR 59(b). The trial court has no discretion to extend the time for a party to file a motion for reconsideration. CR 6(b)(2); In re Marriage of Doneen, 197 Wn. App. 941, 951, 391 P.3d 594 (2017). The denial of an untimely motion for reconsideration is not an abuse of discretion. Griffin v. Draper, 32 Wn. App. 611, 613, 649 P.2d 123 (1982). We hold pro se litigants to the same standards as attorneys. Winter v. Dep't of Soc. & Health Servs., 12 Wn. App. 2d 815, 844, 460 P.3d 667 (2020).

Here, the trial court entered its order granting Ford's motion for summary judgment on April 21, 2023. Cheesman filed his motion for reconsideration 17 days later, on May 8, 2023. Because Cheesman filed his motion more than 10 days after the court's order granting summary judgment, the trial court did not abuse its discretion in denying the motion. We note that Cheesman experienced some difficulty in filing his motion for reconsideration, including questions about notice and oral argument. While we acknowledge these difficulties, they do not extend the time frame within which he needed to file the motion for reconsideration. We reiterate that pro se litigants are held to the same standard as attorneys.

And even if the court had considered Cheesman's motion for reconsideration, denying the motion was not an abuse of discretion because the summary judgment order dismissing the case was proper.

5

Summary Judgment

In his notice of appeal, Cheesman only mentions the court's order denying his motion for reconsideration. His briefing on appeal, however, challenges the court's grant of summary judgment. To the extent that Cheesman intended to appeal the summary judgment order, his arguments are similarly untimely.

In general, RAP 5.2(a) provides that a notice of appeal must be filed in the trial court within 30 days. A timely motion for reconsideration filed in the trial court, for example, will extend the time for an appeal to within 30 days of the order deciding the motion for reconsideration. RAP 5.2(a), (e). An untimely motion, however, will not extend the 30 day deadline. Cox v. Kroger Co., 2 Wn. App. 2d 395, 409, 409 P.3d 1191 (2018). And "an appellate court will only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of appeal." RAP 18.8(b).

Here, Cheesman filed his notice of appeal 55 days after the trial court entered its order on summary judgment. Because the untimely motion for reconsideration did not extend Cheesman's window to appeal the underlying summary judgment order, he is well outside the 30 day limit. And Cheesman neither asks for an extension of time, nor articulates any extraordinary circumstances warranting review to prevent the gross miscarriage of justice. Cheesman did not appeal within the required time frame and there are no exceptions under which to extend that time.

Even if Cheesman had appealed the grant of summary judgment within the appropriate time frame, the court did not err in concluding that Cheesman failed to establish a genuine issue of material fact so as to survive summary judgment.

We review a trial court's grant of summary judgment de novo, engaging in the same inquiry as the trial court. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). On review, we consider the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Keck, 184 Wn.2d at 370. Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A genuine issue of material fact exists "if reasonable minds could differ on facts which control the outcome of the proceeding." Ghodsee v. City of Kent, 21 Wn. App. 2d 762, 768, 508 P.3d 193 (2022), remanded, 1 Wn.3d 101, 526 P.3d 852 (2023). A party opposing summary judgment cannot rely simply on allegations, denials, opinions, or conclusory statements, but instead must provide specific facts establishing a genuine issue for trial. Allen v. Asbestos Corp., Ltd., 138 Wn. App. 564, 570-71, 157 P.3d 406 (2007).

The "Washington Product Liability Act" (WPLA) imposes liability on a manufacturer if a product is not reasonably safe as designed. RCW 7.72.030(1). To maintain a claim under the WPLA, a plaintiff must show "(1) a manufacturer's product (2) was not reasonably safe as designed and (3) caused harm to the

plaintiff." Thongchoom v. Graco Child. Prod., Inc., 117 Wn. App. 299, 304, 71 P.3d 214 (2003).

Here, Cheesman cannot show that his seat belt was not reasonably safe as designed or that it caused him any harm. In support of his assertion that his seat belt was defective, Cheesman only provides conclusory statements that the seat belt failed to retract properly. Ford provided a declaration from Buckman detailing that the 2016 Ford Fiesta's design specifications for safety seat belts met both the Federal Motor Vehicle Safety Standards, 49 C.F.R. § 571.210 (2013), and Ford design specifications. Cheesman admitted before the trial court that the photos he submitted in support of his contention were staged. Moreover, the staged photos only show that it is possible for someone to place the seat belt latch upright against the seat; they do not prove that his seat belt remained in that position.

And although one of the videos submitted by Ford shows that it is possible for a seat belt to retract slowly, Cooper demonstrated that tapping the belt will slide it back into place. The video does not, as Cheesman asserts, establish that the seat belt was malfunctioning.

Further, when asked directly by the judge if he had any medical records to show that he had been injured by the seat belt, Cheesman acknowledged he had no medical evidence to support his claim. When the court then asked Cheesman whether a technician or mechanic had told him that his seat belt was not functioning properly, Cheesman again acknowledged that no one had been able

8

to tell him that anything was wrong. And finally, in his deposition, Cheesman conceded that he "did not really see what injured [him] on [his] back." Without any evidence that the seat belt was defective, that he was injured, or even that he knew what had injured him, Cheesman's allegation that the seat belt caused the back injury is purely speculative. As such, it is insufficient to prove a genuine issue of material fact. Because no genuine issue of material fact existed, the trial court did not err in granting Ford's motion for summary judgment.

We affirm.

_Smith, C.J._

WE CONCUR:

_Chung, J._

_Hazelrigg, A.C.J._