IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 36393-7-III |
| BEVERLY SEVIGNY, | ) | |
| | ) | |
| Respondent/Cross Appellant, | ) | ORDER GRANTING MOTION |
| | ) | FOR RECONSIDERATION, |
| and | ) | WITHDRAWING OPINION, |
| | ) | AND SUBSTITUTING |
| MICHAEL G. SEVIGNY, | ) | OPINION |
| | ) | |
| Appellant/Cross Respondent. | ) | |

Respondent, Beverly Sevigny, filed a motion for reconsideration on May 11, 2020 of the opinion filed in the above matter on April 21, 2020. Appellant, Michael Sevigny, has filed a response to respondent's motion. The court has determined that respondent's motion for reconsideration should be granted, the opinion should be withdrawn and a substitute opinion be filed. Now, therefore, it is hereby

ORDERED that respondent's motion for reconsideration is granted. It is further

ORDERED that the opinion filed on April 21, 2020, is withdrawn and a substitute opinion be filed.

PANEL: Andrus, Lawrence-Berrey, Pennell

FOR THE COURT:

_____
REBECCA PENNELL
Chief Judge



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | |
| BEVERLY SEVIGNY, | ) | No. 36393-7-III |
| | ) | |
| Respondent/Cross Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| MICHAEL G. SEVIGNY, | ) | |
| | ) | |
| Appellant/Cross Respondent. | ) | |

ANDRUS, J. — After 33 years of marriage, Beverly and Michael Sevigny

separated, and two years later, Beverly[1] filed for divorce. The trial court awarded

Michael the marital community's interest in two ongoing businesses, a construction

company and a real estate investment limited liability company (the "LLC"), that

Michael and his oldest son started during the marriage and continued to manage

after the parties' separation. Michael challenges the trial court's valuation of the

LLC, arguing it was inappropriate to include real estate investments the LLC

acquired after separation. Michael contends this error led to an excessive transfer

---

[1] Because the parties share the same last name, we use their first names for
clarity. No disrespect is intended.

payment of $707,485 to Beverly, an amount he argues is an unfair and inequitable distribution of community and separate property. Finally, Michael maintains that, in light of the large property award Beverly received, the trial court abused its discretion in ordering him to pay her maintenance of $6,500 a month for 10 years. Beverly cross appeals the trial court's determination that her judgment against Michael will accrue interest at 4 percent.

We affirm the trial court's characterization of the couple's property, the property distribution, and the post-judgment interest rate. We reverse the award of maintenance and remand for reconsideration of the amount awarded.

FACTS

Michael and Beverly married in 1979. Beverly briefly worked in retail before becoming a full-time, stay-at-home mother after their first child was born. In 1995, when their youngest child was in first grade, Beverly became a part-time substitute teacher, and five years later, she began working as a full-time paraprofessional, helping in the classroom with students. She also worked as a secretary for the school district.

Michael worked construction in his father's business until 2007, when he and his oldest son, Matthew, started their own construction company, M. Sevigny Construction Inc. In mid-2012, Michael and Matthew formed 16th Avenue Properties LLC (the "LLC") as equal partners and began acquiring income-producing real estate.

Michael and Beverly separated in February 2013, and Beverly filed for divorce in 2015. After a bench trial, the trial court divided $2.1 million in net assets as follows: Beverly received the family home in Zillah, a Hawaii timeshare, a vehicle, specific household goods, various bank accounts, deferred compensation accounts, and the parties' IRA accounts and life insurance policies. The trial court valued these assets at $572,911.

Michael received the community's 50 percent interest in M. Sevigny Construction, valued at $775,000, and its 50 percent interest in the LLC, valued at $341,332. Michael also received the family's vacation cabin in Yakima, valued at $200,000. Finally, the court deemed two distributions Michael had received from the LLC in 2016 and 2017, totaling $240,000 after taxes, as predistributions of community assets. The total value of these assets was $1,561,082.

The trial court adopted Michael's recommended asset split of 60/40, favoring Beverly. The result was a final distribution to Michael of $853,597 and to Beverly of $1,280,396. To effectuate this division of assets, the court required Michael to make a transfer payment of $707,485 to Beverly. The trial court entered a judgment against Michael for this amount, plus an additional $10,000 in fees awarded to Beverly, and set the interest rate on the judgment at 4 percent per annum. In addition, the court awarded Beverly spousal maintenance of $6,500 a month until her 70th birthday.

Michael appeals, raising three main challenges to the trial court's division of assets. First, he argues the trial court erred in characterizing the LLC and the income-producing real estate the LLC purchased after the parties' separation as community property. He further argues the trial court erred in awarding Beverly any portion of the LLC's post-separation acquisitions. Second, he maintains the trial court erred in valuing the LLC as of the date of trial, rather than the date of separation. Finally, he contends the maintenance award is unjust and inequitable in light of the large transfer payment and the fact that Beverly received all the liquid assets in the divorce. He asserts that he is unable to pay Beverly $6,500 each month, fulfill his own obligations, and satisfy the money judgment.

ANALYSIS

*Characterization of the LLC as Community Property*

Michael assigns error to the trial court's characterization of the LLC as community property. Because Michael formed and capitalized the LLC before the couple separated, the trial court did not err in concluding Michael's interest in the LLC was community property.

Under RCW 26.09.080, in any dissolution proceeding, the court must dispose of the parties' property and liabilities, whether community or separate, as is just and equitable. In performing its obligation to make a just and equitable distribution of property, the trial court must characterize the property as either community or separate. *In re Marriage of Kile*, 186 Wn. App. 864, 875, 347 P.3d 894 (2015).

"Property is characterized as of the date of its acquisition." *In re Marriage of Sedlock*, 69 Wn. App. 484, 506, 849 P.2d 1243 (1993). "The test of character is 'whether it was acquired by community funds and community credit, or separate funds and the issues and profits thereof.'" *Id.* (internal quotation marks omitted) (quoting *Katterhagen v. Meister*, 75 Wash. 112, 115, 134 P. 673 (1913)). "A trial court's characterization of property as separate or community presents a mixed question of law and fact." *Kile*, 186 Wn. App. at 876. The time and method of acquisition are questions for the trier of fact. *Id.* We review the factual findings supporting a trial court's characterization for substantial evidence. *Id.* "'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.'" *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002) (quoting *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986)). The ultimate characterization of the property as community or separate based on the trial court's findings of fact is a question of law that we review de novo. *Kile*, 186 Wn. App. at 876.

The LLC was formed and capitalized during the marriage. Michael testified he and Matthew started the LLC sometime in 2012 and each owns a 50 percent share of that entity. The 2012 tax return for the LLC identified the date of business formation as June 26, 2012. The LLC's assets on the date of formation were a

commercial building located at 1212 N. 16th Avenue, in Yakima, Washington[2] with

a cost basis of $544,250, and a separate parcel of land valued at $429,660. There is

no evidence in the record as to the source of funds Michael and Matthew used to

capitalize the LLC or to purchase these two initial assets.

The LLC then acquired a parcel in Yakima with three rental houses located

at 1607, 1611, and 1703 River Road on December 11, 2012.[3] The LLC's 2013 tax

return identified the cost basis of this parcel as $378,744. This acquisition also

occurred during the marriage. Again, Michael presented no evidence as to the

source of funds he and Matthew used to make this acquisition.

Finally, Michael admitted Beverly had a 25 percent ownership interest in the

LLC, stating, "I've never disputed that." Beverly testified she and Michael planned

to use the purchase of these properties as their retirement plan to compensate them

over and above their wages. She also testified that she was asked to sign sale

documents every time the LLC purchased or changed properties because she was

part of that company. This evidence supports the trial court's conclusion that the

marital community's 50 percent interest in the LLC was community property.

*Valuation of the LLC Including Post-Separation Acquisitions*

Michael next argues the trial court erred in valuing the LLC as of the date of

trial, rather than the date of separation. He contends the LLC acquired several

---

[2] The LLC held this property at the time of trial, where it was identified in Steve Korn's appraisal report, obtained by Beverly, as Parcel 1.

[3] The appraisal identified the River Road property as Parcel 3.

parcels of real estate after the couple's separation, emphasizing the trial court's finding that "the parties stopped acquiring community property and incurring community debt" when they separated in February 2013. He maintains the appreciation in the LLC's value should have been characterized as his separate property under RCW 26.16.140. We reject this argument because Michael did not prove he used separate property to enhance the value of the LLC.

All property acquired during marriage is presumptively community property. RCW 26.16.030; *Kile*, 186 Wn. App. at 876. "The burden of rebutting this presumption is on the party challenging the asset's community property status, and [the presumption] 'can be overcome only by clear and convincing proof that the transaction falls within the scope of a separate property exception.'" *Dean v. Lehman*, 143 Wn.2d 12, 19-20, 18 P.3d 523 (2001) (citation omitted) (quoting *Estate of Madsen v. Commissioner*, 97 Wn.2d 792, 796, 650 P.2d 196 (1982), *overruled in part on other grounds by Aetna Life Ins. v. Wadsworth*, 102 Wn.2d 652, 659-60, 689 P.2d 46 (1984)). RCW 26.16.140 provides one such exception: when spouses are living separate and apart, their respective earnings and accumulations shall be their separate property.

After Michael and Beverly separated in February 2013, the LLC bought and sold several parcels of real estate. In July 2013, the LLC purchased property located at 503 S. Elm Street in Toppenish, Washington for $337,000. According to Beverly, the LLC later sold this parcel for $500,000.

In September 2013, the LLC acquired commercial property located at 1928 Rudkin Road, in Union Gap, Washington, for $1.2 million.[4] Then in November 2014, the LLC purchased commercial property located at 1177 W. Lincoln Avenue, in Yakima, for $594,377.[5] And at the time of trial, the LLC also owned a piece of undeveloped land at 1725 River Road in Yakima, although the record does not indicate when it was acquired or its purchase price.[6]

Michael had the burden of proving by clear and convincing evidence that the LLC's acquisitions involved an investment of his separate property. *Sedlock*, 69 Wn. App. at 509; *see also In re Marriage of Schwarz*, 192 Wn. App. 180, 189, 368 P.3d 173 (2016). While Michael is correct that RCW 26.16.140 characterizes earnings and assets accumulated after separation as separate property, he produced no evidence that he used his separate earnings to purchase any of real estate the LLC holds.

> The requirement of clear and satisfactory evidence is not met by the mere self-serving declaration of the spouse claiming the property in question that he acquired it from separate funds and a showing that separate funds were available for that purpose. Separate funds used for such a purpose should be traced with some degree of particularity.

---

[4] The appraisal identified the Rudkin Road property as Parcel 5.

[5] The appraisal identified the Lincoln Avenue property as Parcel 4.

[6] The appraisal identified this undeveloped land as Parcel 2.

*Berol v. Berol*, 37 Wn.2d 380, 382, 223 P.2d 1055 (1950). Michael did no tracing to establish that he used separate funds to acquire any of the properties the LLC purchased after separation and, thus, failed to meet his burden of proof.

Moreover, throughout their separation, Michael and Beverly filed joint tax returns declaring income from the LLC as community income. In the tax years 2013 through 2016, the marital community reported income from the LLC of $15,252, $93,310, $81,960, and $140,760, respectively. Michael and Beverly both treated the LLC as a community asset and the income generated from properties the LLC purchased both before and after separation as community income.

We further conclude the trial court did not abuse its discretion in valuing the LLC as of the date of trial, rather than the date of separation. The dissolution statutes give courts broad discretion to pick a valuation date that is equitable. *Lucker v. Lucker*, 71 Wn.2d 165, 167, 426 P.2d 981 (1967). Choosing to value a community asset on the date of trial, rather than the date of separation, is not an abuse of discretion. *Koher v. Morgan*, 93 Wn. App. 398, 405, 968 P.2d 920 (1998).

Beverly presented expert testimony from real estate appraiser Steve Korn as to the value of the LLC's assets as of February 2017, some four years after separation and one year before trial. The appraisal identified six parcels in which the LLC held an ownership interest: Parcel 1 and Parcel 3, properties purchased before separation, and Parcels 2 and 4 through 6, properties in which the LLC obtained an interest after separation.

Michael presented no expert testimony regarding the value of the LLC on the date of separation. Instead, he testified he believed the community interest in the LLC as of December 2012, and therefore at the time of separation, was $153,228. It appears he pulled this number from the LLC's 2012 tax return identifying the value of each partner's capital account. But Michael did not explain why his valuation approach was preferable or a more reliable method of valuing the LLC than Korn's appraisal.

The trial court chose to adopt Korn's valuation. It found the community interest in the real estate held by the LLC had a value, as of the appraisal date, of $2,355,250. After subtracting the outstanding debt of $2,013,918, the court found the LLC business had a net value to the community of $341,332.

We cannot conclude the trial court abused its discretion in valuing the marital community's interest in the LLC as of February 2017 rather than December 2012. There is no evidence showing Michael invested any post-separation earnings to enable the LLC to acquire any of the three parcels it purchased after February 2013. And it is also unclear whether the LLC used rental income from parcels it acquired before the parties' separation to buy parcels post-separation. Although Michael testified he could produce paperwork to demonstrate he had used post-separation earnings, he failed to present any such evidence.

Michael relies on *In re Marriage of Elam*, 97 Wn.2d 811, 650 P.2d 213 (1982), for the proposition that the marital community cannot share in the increase

in value of separate property unless community funds or "efforts" went into increasing the value of that property. But the LLC was community property, not Michael's separate property, as Michael admitted at trial. And Michael presented no evidence at trial to establish that the LLC increased in value because of his investment of separate funds or his separate efforts after the parties separated. Thus, *Elam* is of no assistance to him here.

Under these circumstances, the trial court did not err in concluding that Michael's 50 percent interest in the LLC was community property, as was any appreciation in value to that interest based on the acquisition of properties after separation.

*Property Division*

Next, Michael contends the trial court erred in awarding Beverly a disproportionate share of the parties' property.[7] Trial courts have broad discretion in dividing parties' property in a dissolution, and we will disturb a distribution of property only if the trial court manifestly abuses its discretion. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999); *see also In re Marriage of Rockwell*, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). A trial court's decision

---

[7] Michael also contends the property division should be reversed because it was influenced in part by Beverly's intimation that Michael was living with another woman. There is absolutely nothing in the record or the trial court's ruling to support this argument. Michael's living arrangements became relevant when he contested Beverly's request for spousal maintenance, claiming he could not afford to pay it. The court correctly needed to assess Michael's ability to pay maintenance, and this analysis made his monthly living expenses relevant.

is manifestly unreasonable if it is outside the range of acceptable choices considering the facts and applicable legal standard, is unsupported factually by the record, or is based on an incorrect legal standard. *In re Parenting & Support of L.H.*, 198 Wn. App. 190, 194, 391 P.3d 490 (2016).

All of the parties' property, both community and separate, is before the trial court for distribution. *In re Marriage of Shannon*, 55 Wn. App. 137, 141, 777 P.2d 8 (1989). And the trial court's characterization of property as either community or separate is not controlling. *Id.* Instead, the trial court must ensure the final division is fair, just and equitable under all the circumstances. *In re Marriage of Groves*, 10 Wn. App. 2d 249, 254, 447 P.3d 643 (2019), *review denied*, 195 Wn.2d 1005, 458 P.3d 781 (2020).

In dividing property, the trial court must consider: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of property is to become effective. RCW 26.09.080; *Groves*, 10 Wn. App. 2d at 254. No factor is afforded greater weight than any other. *In re Marriage of Konzen*, 103 Wn.2d 470, 478, 693 P.2d 97 (1985). Other relevant factors include "the health and ages of the parties, their prospects for future earnings, their education and employment histories, their necessities and financial abilities, their foreseeable future acquisitions and obligations, and whether ownership of the

property is attributable to the inheritance or efforts of one or both spouses." *In re Marriage of Gillespie*, 89 Wn. App. 390, 399, 948 P.2d 1338 (1997).

A trial court is not required to divide community property equally. *Rockwell*, 141 Wn. App. at 243. In a long-term marriage, "the trial court's objective is to place the parties in roughly equal financial positions for the rest of their lives." *Id.* "'[T]he trial court must ensure that the final division of property is fair, just and equitable under all the circumstances.'" *Groves*, 10 Wn. App. 2d at 254 (internal quotation marks omitted) (quoting *In re Marriage of Olivares*, 69 Wn. App. 324, 329, 848 P.2d 1281 (1993)). Furthermore, this is a highly deferential standard, and Michael, as the spouse challenging the decision, "'bears the heavy burden of showing a manifest abuse of discretion.'" *Id.* at 255 (quoting *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985)).

Michael argues that under *In re Marriage of Doneen*, 197 Wn. App. 941, 391 P.3d 594 (2017), and *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 421 P.3d 1046 (2018), there is no mandate of lifetime equal financial circumstances for ex-spouses of long-term marriages. He contends the trial court, in an attempt to provide this financial security for Beverly, settled on a property division that was unfair to him. But neither case supports the proposition that it is an abuse of discretion to award 60 percent of a couple's assets to the more economically disadvantaged spouse in a long-term marriage. Rather, the courts reaffirmed the proposition that trial courts must exercise their discretion in considering the statutory factors of RCW 26.09.080

in reaching a "fair, just and equitable division of property." *Kaplan*, 4 Wn. App. 2d at 475-76; *Doneen*, 197 Wn. App. at 948-51.

Substantial evidence supports the trial court's property distribution. Michael and Beverly had been married more than 33 years. Beverly did not finish college because she married Michael and remained out of the workforce to raise their five children. Both parties were 60 at the time of trial and in good health. The parties had very disparate earnings histories. Beverly, working as a paraprofessional and secretary for the local school district, earned between $15 per hour and $17 per hour in the two positions. The trial court found that her gross wages in 2017 were $26,530. Given Beverly's lack of a college degree, it was reasonable for the trial court to assume her prospects for any substantial wage increases before she reaches retirement age are low.

Michael did not produce any income documentation for 2017, but the 2016 corporate tax return indicated Michael received a salary of $86,320 from his construction company that year, and he testified his salary in 2017 was about the same as in 2016. In addition, the LLC's Schedule K-1 reflected a $150,000 distribution to Michael, and he testified he expected a similar distribution in 2017. Thus, by awarding Michael the LLC, it was reasonable for the trial court to conclude that Michael's annual income would likely exceed $200,000 compared to Beverly's $26,530. And the financial documents showed a strong history of profitability both for the construction company and the LLC, making it likely that Michael would

continue to receive the same level of earnings into the foreseeable future. Finally, Michael proposed a 60/40 split with Beverly obtaining the larger share of the marital estate.

The court awarded the family home to Beverly and the vacation cabin to Michael. It awarded the IRAs, bank accounts, and life insurance policies to Beverly. It awarded the marital community's interest in the two businesses to Michael. Because Michael received the two assets with the highest values—the construction company and the LLC—the only way to achieve an equal property division was to require a transfer payment from Michael to Beverly. Given the significant disparity in the parties' ability to generate income in the future, the award of income-producing property to Michael, and Michael's request for a 60/40 split in favor of Beverly, we cannot conclude that a 60 percent award to Beverly was an abuse of discretion.

*Maintenance*

Michael next assigns error to the trial court's award of spousal maintenance. Michael argues the trial court failed to consider the property awarded to Beverly in assessing her need for maintenance and failed to take into account Michael's obligation to pay Beverly $707,000 when evaluating his ability to pay.

RCW 26.09.090 outlines a nonexclusive list of factors the court should consider in determining whether to order maintenance and in what amount:

(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently . . . ;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage . . . ;

(d) The duration of the marriage . . . ;

(e) The age, physical and emotional condition, and financial obligations of the spouse . . . seeking maintenance; and

(f) The ability of the spouse . . . from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse . . . seeking maintenance.

In a long term marriage, maintenance can help equalize the post-dissolution standard of living of the parties, particularly where the superior earning capacity of one spouse is one of the few assets of the community. *In re Marriage of Sheffer*, 60 Wn. App. 51, 57, 802 P.2d 817 (1990).

At trial, Beverly sought maintenance of 50 percent of their combined incomes for the remainder of her life. Michael paid Beverly $3,000 a month in support after they separated in February 2013 until the date of trial. He asked the trial court to reduce that amount to $2,500 and to require him to pay maintenance for no more than five years. The trial court found that Beverly was in need of maintenance and that Michael had the ability to pay it. It then determined the couple's net combined income was $16,534. It appears the court divided the

couple's total net income in two and awarded Beverly a sufficient amount of maintenance to ensure she received 50 percent of the couple's total net earnings.[8]

This court reviews an award of spousal maintenance for an abuse of discretion. *In re Marriage of Zahm*, 138 Wn.2d 213, 226, 978 P.2d 498 (1999). An abuse of discretion exists only if the trial court bases its award of maintenance on untenable grounds or for untenable reasons. *In re Marriage of Wright*, 78 Wn. App. 230, 237, 896 P.2d 735 (1995). A paramount concern is the economic position in which a dissolution decree leaves the parties. *In re Marriage of Washburn*, 101 Wn.2d 168, 181, 677 P.2d 152 (1984).

The record supports the trial court's finding that Beverly has a need for maintenance. She testified to monthly expenses of approximately $3,000 and only $1,701 in earnings to cover those expenses. And the record supports Michael's ability to pay $6,500 in maintenance to Beverly if the court considered only Michael's personal living expenses. He has monthly expenses of $5,000. After paying maintenance and his monthly expenses, Michael would have approximately $3,300 in disposable income.

But the record does not support a finding that he has the ability to pay both the $707,000 judgment entered against him and this level of maintenance at the same time. RCW 26.09.090(1)(f) requires the court to consider not only the

---

[8] Total net income of $16,534, divided by two is $8,267. Subtracting Beverly's net income of $1,701 results in $6,566.

spouse's ability to meet his own needs but also his ability to meet his other "financial obligations" while paying spousal maintenance. As Michael indicated, he was awarded interests in two income-generating companies but none of the parties' liquid assets. In order to pay the $707,000 judgment, Michael would have to either use a substantial portion of his earnings, sell his interests in his businesses, or convince his son to sell real estate held by the LLC. But Michael's interest in the LLC was valued at under $350,000, and even if the LLC sold all of the properties it held, it would not cover the judgment Michael owes to Beverly. And Michael's main source of income would disappear. He would no longer have an adequate monthly income to pay the $6,500 in maintenance.

Even if the LLC sold one or more properties to assist Michael in paying off some, but not all, of Beverly's judgment, it would still negatively affect his total income, making the court's 50/50 split of total net income unfair. It is unclear from this record whether the trial court fairly assessed this issue. Its failure to give fair consideration to RCW 26.09.090(1)(f), or to make findings to support a determination that Michael can both service his debt to Beverly without a significant loss of income and afford to pay $6,500 a month in maintenance is an abuse of discretion. *See In re Marriage of Mathews*, 70 Wn. App. 116, 123-25, 853 P.2d 462 (1993) (reversing maintenance award and remanding for trial court to reconsider factors to ensure obligor had ability to meet own expenses in addition to financial obligations imposed by court).

For this reason, we reverse the maintenance award and remand to the trial court with directions to consider maintenance in light of the monetary judgment Michael owes to Beverly and his ability to simultaneously pay off that judgment and pay reasonable maintenance.

*Post-Judgment Interest*

Beverly argues the trial court erred by imposing only a four percent interest rate on the equalizing payment and attorney fee judgment. We reject this argument.

We review a trial court's decision setting the interest rate on a judgment for an abuse of discretion. *In re Marriage of Knight*, 75 Wn. App. 721, 731, 880 P.2d 71 (1994). Trial courts must enter judgments in compliance with RCW 4.56.110, which requires interest on judgments to accrue at the maximum rate permitted under RCW 19.52.020—12 percent. *In re Marriage of Harrington*, 85 Wn. App. 613, 630-31, 935 P.2d 1357 (1997). "Although the trial court has discretion to reduce the rate of interest on deferred payments under a property distribution decree, the court abuses its discretion if it fixes an interest rate below the statutory rate without setting forth adequate reasons for the reduction." *Id.* at 631 (citations omitted). "'Failure to do so constitutes error meriting remand for correction of the judgment's interest rate to the statutory rate.'" *Id.* (quoting *Knight*, 75 Wn. App. at 731).

Michael asked the court to set the interest on any monetary judgment at 3 or 3.5 percent given the size of the judgment and the monthly maintenance he had to pay. Beverly requested the 12 percent statutory rate because Michael's businesses

were so profitable. The trial court stated, "I'm going to set the interest rate at 4 percent. That's reasonable under the circumstances given the uneven distribution as well as the . . . maintenance."

Beverly argues the trial court's reference to the disproportionate property division and maintenance is an insufficient justification for a reduced interest rate. We disagree. The trial court found persuasive Michael's argument that setting post-judgment interest at 12 percent would impose too great of a financial burden on him given the amount of judgment and maintenance. This is an adequate reason to depart from the statutory post-judgment interest rate.

Beverly also argues the low interest rate creates a disincentive for Michael to pay the judgment. But Beverly relies on evidence outside the trial court record to make this argument. There is nothing in the record before the trial court to substantiate this assertion.

Moreover, Beverly has methods under the law for collecting the judgment, even if Michael refuses to pay. She has the right to initiate collection proceedings through which she can garnish wages or proceeds he may hold in bank accounts, or attach and sell other assets. *See* chapter 6.25 RCW (attachment); chapter 6.27 RCW (garnishment); chapter 6.32 RCW (supplemental proceedings against judgment debtor). She is not without a legal remedy here. Because the trial court provided an adequate reason for reducing the interest rate, we conclude the trial court did not abuse its discretion by reducing the interest rate to four percent.

AFFIRMED in part; REVERSED in part, and REMANDED for reconsideration of maintenance in a manner consistent with this opinion.[9]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Andrus, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, C.J.

---

[9] Beverly has requested an award of attorney fees and costs as allowed by RAP 18.1 and RCW 26.09.140. RCW 26.09.140 provides, "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs." "A party to a dissolution action is not entitled to attorney fees as a matter of right." *In re Marriage of Harrington*, 85 Wn. App. 613, 635, 935 P.2d 1357 (1997), *as amended on reconsideration* (May 5, 1997). In addition, when deciding whether to award attorney fees, we must balance Beverly's needs against Michael's ability to pay. *Id.* Because we remand for reconsideration of the maintenance award based on Michael's ability to meet his financial obligations and otherwise affirm the trial court, we exercise our discretion under RCW 26.09.140 and deny Beverly's request for attorney fees on appeal.